**FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. JAMES WETTA, | ) | |
| | ) | C.A. No. 04-3479 |
| Plaintiff, | ) | |
| | ) | Filed Under Seal |
| v. | ) | |
| | ) | |
| ASTRAZENECA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' NOTICE OF INTERVENTION FOR PURPOSES OF SETTLEMENT**

The United States of America, by and through its undersigned attorneys, provides this written notice to the Court that it is intervening in the above-captioned action pursuant to 31 U.S.C. §3730(b) for the purposes of settlement and dismissal.

The United States, relator James Wetta and defendant AstraZeneca have reached an amicable resolution of these matters. A copy of the Settlement Agreement is attached as Exhibit A. The parties agree that, upon receipt of the Settlement Amount as defined in the Settlement Agreement, the United States and relator will file a Stipulation of Dismissal in accordance with

the terms of the Settlement Agreement.

Respectfully submitted,

MICHAEL L. LEVY
United States Attorney

VIRGINIA A. GIBSON
First Assistant United States Attorney

COLIN M. CHERICO
Assistant United States Attorney

# EXHIBIT A

<u>SETTLEMENT AGREEMENT</u>

## I. <u>PARTIES</u>

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and the United States Attorney's Office for the Eastern District of Pennsylvania, the Office of Inspector General of the United States Department of Health and Human Services ("OIG-HHS"), the TRICARE Management Activity ("TMA"), and the United States Office of Personnel Management ("OPM") (collectively the "United States"); James Wetta ("Wetta"); Stephan Kruszewski, M.D. ("Kruszewski"); and Astra Zeneca LP and AstraZeneca Pharmaceuticals LP (collectively, "AstraZeneca"), through their authorized representatives. Collectively, all of the above will be referred to as "the Parties."

## II. <u>PREAMBLE</u>

As a preamble to this Agreement, the Parties agree to the following:

A.     AstraZeneca LP and AstraZeneca Pharmaceuticals LP are Delaware limited partnerships with their principal places of business in Wilmington, Delaware. At all relevant times herein, AstraZeneca distributed, marketed and sold pharmaceutical products in the United States, including a drug sold under the trade name of Seroquel.

B.     On July 24, 2004, Wetta filed a <u>qui</u> <u>tam</u> action in the United States District Court for the Eastern District of Pennsylvania captioned <u>United States of America ex rel. James Wetta v. AstraZeneca Corporation</u>, Civil Action No. 04-3479 (hereinafter "Civil Action I").

C.     On September 8, 2006, Kruszewski filed a <u>qui</u> <u>tam</u> action in the United States District Court for the Eastern District of Pennsylvania captioned <u>United States of America ex rel. Stephan Kruszewski v. AstraZeneca Pharmaceuticals LP</u>, Civil Action No. 06-4004

(hereinafter "Civil Action II").  Civil Action I and Civil Action II hereinafter may be referred to collectively as the "Civil Actions."

      D.      AstraZeneca has entered or will be entering into separate settlement agreements, described in Paragraph 1(b), below (hereinafter referred to as the "Medicaid State Settlement Agreements") with certain states and the District of Columbia in settlement of the Covered Conduct.  States with which AstraZeneca executes a Medicaid State Settlement Agreement in the form to which AstraZeneca and the National Association of Medicaid Fraud Control Units ("NAMFCU") Negotiating Team have agreed, or in a form otherwise agreed to by AstraZeneca and an individual State, shall be defined as "Medicaid Participating States."

      E.      The United States and the Medicaid Participating States allege that AstraZeneca caused claims for payment for Seroquel to be submitted to the Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v (the Medicaid Program).

      F.      The United States further alleges that AstraZeneca caused claims for payment for Seroquel to be submitted to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. § 1395-1395hhh; the TRICARE program, 10 U.S.C. §§ 1071-1109; the Federal Employees Health Benefits Program ("FEHBP"), 5 U.S.C. §§ 8901-8914; the Federal Employees Compensation Act Program, 5 U.S.C. § 8101 et seq; and caused purchases of Seroquel by the Department of Veterans' Affairs ("DVA"), Department of Defense, and the Bureau of Prisons ("BOP") (collectively, the "other Federal Health Care Programs").

      G.      The United States contends that it has certain civil claims, as specified in Paragraph 2, below, against AstraZeneca for engaging in the following conduct during the period January 1, 2001 through December 31, 2006 (hereinafter referred to as the "Covered Conduct"):

(1)     AstraZeneca promoted the sale and use of Seroquel to psychiatrists, other physicians (including primary care physicians) and other health care professionals in pediatric and primary care physician offices, in long-term care facilities and hospitals and in prisons for certain uses that were not approved by the Food and Drug Administration as safe and effective for those uses (including aggression, Alzheimer's disease, anger management, anxiety, attention deficit hyperactivity disorder, bipolar maintenance, dementia, depression, mood disorder, post-traumatic stress disorder, and sleeplessness) ("unapproved uses"). AstraZeneca also promoted the unapproved uses by engaging in the following conduct: AstraZeneca improperly and unduly influenced the content of and speakers in company-sponsored Continuing Medical Education programs; engaged doctors to give promotional speaker programs it controlled on unapproved uses for Seroquel; engaged doctors to conduct studies on unapproved uses of Seroquel; recruited doctors to serve as authors of articles largely prepared by medical literature companies about studies they did not conduct on unapproved uses of Seroquel; and, used those studies and articles as the basis for promotional messages about unapproved uses of Seroquel. These unapproved uses were not medically accepted indications for which the United States and the state Medicaid programs provided coverage for Seroquel.

(2)     AstraZeneca offered and paid illegal remuneration to doctors: (a) it recruited to conduct studies for unapproved uses, (b) it recruited to serve as authors of articles written by AstraZeneca and its agents about these unapproved uses of Seroquel, (c) to travel to resort locations to "advise" AstraZeneca about marketing messages for unapproved uses of Seroquel, and (d) it recruited to give promotional lectures to other health care professionals about unapproved and unaccepted uses of Seroquel. The United States contends that these payments were intended to induce the doctors to promote and/or prescribe Seroquel for unapproved uses in violation of the Federal Anti-Kickback Statute, 42 U.S.C. § 1320-7b(b).

As a result of the foregoing conduct, the United States contends that AstraZeneca knowingly caused false or fraudulent claims for Seroquel to be submitted to, or caused purchases by, Medicaid, Medicare and the other Federal Health Care Programs.

H.     The United States also contends that it has certain administrative claims against AstraZeneca, as set forth in Paragraphs 4 through 6, below, for engaging in the Covered Conduct.

I.     This Agreement is made in compromise of disputed claims.  This Agreement is neither an admission of facts or liability by AstraZeneca nor a concession by the United States that its claims are not well founded.  AstraZeneca expressly denies the allegations of the United States, the Medicaid Participating States, Wetta and Kruszewski as set forth herein and in Civil Action I and Civil Action II and denies that it has engaged in any wrongful conduct. Neither this Agreement, its execution, nor the performance of any obligation under it, including any payment, nor the fact of settlement, are intended to be, or shall be understood as, an admission of liability or wrongdoing, or other expression reflecting on the merits of the dispute by AstraZeneca.

J.     To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement pursuant to the Terms and Conditions below.

### III.  TERMS AND CONDITIONS

NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants, and obligations in this Agreement, and for good and valuable consideration, receipt of which is hereby acknowledged, the Parties agree as follows:

1.     AstraZeneca agrees to pay to the United States and the Medicaid Participating States, collectively, the sum of Five Hundred and Twenty Million Dollars ($520,000,000), plus

*Settlement Agreement Between*
*United States and AstraZeneca, Inc.*

accrued interest at the rate of 3% per annum from December 1, 2009, and continuing until and including the date of payment (the "Settlement Amount"). Payments shall be made as follows:

(a)     AstraZeneca shall pay to the United States the sum of $301,907,007, plus accrued interest as set forth above ("Federal Settlement Amount"). The Federal Settlement Amount shall be paid by electronic funds transfer pursuant to written instructions from the United States no later than ten (10) business days after the Effective Date of this Agreement.

(b)     AstraZeneca shall pay to the Medicaid Participating States the sum of $218,092,993, plus accrued interest as set forth above ("Medicaid State Settlement Amount") pursuant to written instructions from the NAMFCU Negotiating Team and under the terms and conditions of the Medicaid State Settlement Agreements that AstraZeneca will enter into with the Medicaid Participating States.

(c )     Contingent upon the United States receiving the Federal Settlement Amount from AstraZeneca, the United States agrees to pay, as soon as feasible after receipt, to Wetta $45,286,051, plus a pro rata share of the actual accrued interest paid to the United States by AstraZeneca, as set forth in Paragraph 1(a), above, ("Relator's Share") as relator's share of the proceeds pursuant to 31 U.S.C. § 3730(d). No other relator payments of any sort shall be made by the United States to Wetta and/or Kruszewski with respect to the matters covered by this Agreement.

(d)     Wetta and Kruszewski have entered into a separate agreement under which Kruszewski will receive a portion of the Relator's Share.

2.     Subject to the exceptions in Paragraph 7, below, in consideration of the obligations of AstraZeneca in this Agreement, conditioned upon AstraZeneca's full payment of

*Settlement Agreement Between*
*United States and AstraZeneca, Inc.*

–5–

the Settlement Amount, the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release AstraZeneca, together with AstraZeneca's predecessors, current and former parents, affiliates, direct and indirect subsidiaries, brother or sister entities, divisions, transferees, successors and assigns, and all of their current or former directors, officers and employees (hereinafter, collectively "AstraZeneca Releasees") from any civil or administrative monetary claim the United States has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision for which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I, Section 0.45(D); or the common law theories of payment by mistake, unjust enrichment, fraud, disgorgement of illegal profits, and, if applicable, breach of contract.

3.     In consideration of the obligations of AstraZeneca in this Agreement, conditioned upon AstraZeneca's full payment of the Settlement Amount, Wetta and Kruszewski, for themselves and for their heirs, successors, attorneys, agents, and assigns, fully and finally release the AstraZeneca Releasees from any claim the United States has, may have or could have asserted related to the Covered Conduct, and from all liability, claims, demands, actions or causes of action whatsoever existing as of the Effective Date of this Agreement, whether known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation or that they or their heirs, successors, attorneys, agents and assigns otherwise would have standing to bring, including any liability arising from the filing of the Civil Actions, except for any claims they may have under 31 U.S.C. § 3730(d) and/or 31 U.S.C.

§ 3730(h).

4.      In consideration of the obligations of AstraZeneca in this Agreement and the
Corporate Integrity Agreement ("CIA"), entered into between OIG-HHS and AstraZeneca,
conditioned upon AstraZeneca's full payment of the Settlement Amount, OIG-HHS
agrees to release and refrain from instituting, directing, or maintaining any administrative action
seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined
in 42 U.S.C. § 1320a-7b(f)), against AstraZeneca under 42 U.S.C. § 1320a-7a (Civil Monetary
Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and
other prohibited activities) for the Covered Conduct, except as reserved in Paragraph 7 below,
and as reserved in this Paragraph.  The OIG-HHS expressly reserves all rights to comply with
any statutory obligations to exclude AstraZeneca from Medicare, Medicaid, and other Federal
health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the
Covered Conduct.  Nothing in this Paragraph precludes the OIG-HHS from taking action against
entities or persons, or for conduct and practices, for which claims have been reserved in
Paragraph 7, below.

5.      In consideration of the obligations of AstraZeneca set forth in this Agreement,
conditioned upon AstraZeneca's full payment of the Settlement Amount, TMA agrees to release
and refrain from instituting, directing, or maintaining any administrative action seeking
exclusion from the TRICARE Program, against AstraZeneca under 32 C.F.R. § 199.9 for the
Covered Conduct, except as reserved in Paragraph 7, below, and as reserved in this Paragraph.
TMA expressly reserves authority to exclude AstraZeneca under 32 C.F.R. §§ 199.9 (f)(1)(i)(A),
(f)(1)(i)(B), and (f)(1)(iii), based upon the Covered Conduct.  Nothing in this Paragraph

precludes TMA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 7, below.

  6.  In consideration of the obligations of AstraZeneca in this Agreement, conditioned upon AstraZeneca's full payment of the Settlement Amount, OPM agrees to release and refrain from instituting, directing, or maintaining any administrative action, against AstraZeneca under 5 U.S.C. § 8902a or 5 C.F.R. Part 919 or Part 970 for the Covered Conduct, except as reserved in Paragraph 7, below and except as required by 5 U.S.C. §8902a(b). Nothing in this Paragraph precludes OPM from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 7, below.

  7.  Notwithstanding any term of this Agreement, the following claims of the United States are specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including AstraZeneca, Wetta and/or Kruszewski):

    (a)  Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

    (b)  Any criminal liability;

    (c )  Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

    (d)  Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    (e)  Any liability based upon such obligations as are created by this Agreement;

    (f)  Any liability for express or implied warranty claims or other claims for

defective or deficient products or services, including quality of goods and services;

(g) Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

(h) Any liability for failure to deliver goods or services due.

8. Wetta and Kruszewski and their heirs, successors, attorneys, agents, and assigns agree not to object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and, conditioned upon the United States' payment of the Relator's Share, as set forth in Paragraph 1(c), above, Wetta and Kruszewski, for themselves individually, and for their heirs, successors, agents, and assigns, fully and finally release, waive, and forever discharge the United States, and its officers, agents, and employees, from any claims arising from or relating to 31 U.S.C. § 3730; from any claims arising from the filing of Civil Action I and/or Civil Action II; and from any other claims for a share of the Settlement Amount or payment of any sort from the United States relating to the Settlement Agreement or the filing of Civil Action I and/or Civil Action II; and in full settlement of any claims Wetta and/or Kruszewski may have under this Agreement. This Agreement does not resolve or in any manner affect any claims the United States has or may have against Wetta and/or Kruszewki arising under Title 26, U.S. Code (Internal Revenue Code), or any claims arising under this Agreement.

9. AstraZeneca waives and shall not assert any defenses AstraZeneca may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth

Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

10.     AstraZeneca fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that AstraZeneca has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

11.     Conditioned upon Wetta and Kruszewski's compliance with their obligations under this Agreement, AstraZeneca fully and finally releases Wetta and Kruszewski from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that AstraZeneca has asserted, could have asserted, or may assert in the future against Wetta and/or Kruszewksi, related to the Covered Conduct and Wetta and/or Kruszewski's investigation and prosecution thereof, except to the extent related to claims Wetta or Kruszewski may have under 31 U.S.C. § 3730(d) and/or 31 U.S.C. § 3730(h).

12.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any other state or Federal payer, related to the Covered Conduct; and AstraZeneca agrees not to resubmit to any Medicare carrier or intermediary or any other state or Federal payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such

denials of claims.

13.   AstraZeneca agrees to the following:

(a)   <u>Unallowable Costs Defined:</u>  that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh and 1396-1396v; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of AstraZeneca, its present or former officers, directors, employees, shareholders and agents in connection with the following shall be "Unallowable Costs" on government contracts and under the Medicare Program, Medicaid Program, TRICARE Program, and FEHBP:

(i)   the matters covered by this Agreement;

(ii)   the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(iii)   AstraZeneca's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(iv)   the negotiation and performance of this Agreement;

(v)   the payment AstraZeneca makes to the United States pursuant to this Agreement and any payments that AstraZeneca may make to Wetta and/or Kruszewski, including costs and attorneys fees; and

(vi)   the negotiation of, and obligations undertaken pursuant to the CIA to:

(a)    retain an independent review organization to perform

annual reviews as described in Section III of the CIA; and

(b)    prepare and submit reports to the OIG-HHS.

However, nothing in this paragraph 13(a)(vi) that may apply to the obligations

undertaken pursuant to the CIA affects the status of costs that are not allowable based on any

other authority applicable to AstraZeneca.  (All costs described or set forth in this Paragraph

13(a) are hereafter "Unallowable Costs.")

(b)    Future Treatment of Unallowable Costs:  If applicable, these Unallowable

Costs shall be separately determined and accounted for by AstraZeneca, and AstraZeneca shall

not charge such Unallowable Costs directly or indirectly to any contracts with the United States

or any State Medicaid program, or seek payment for such Unallowable Costs through any cost

report, cost statement, information statement, or payment request submitted by AstraZeneca or

any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

(c )    Treatment of Unallowable Costs Previously Submitted for Payment:  If

applicable, AstraZeneca further agrees that within 90 days of the Effective Date of this

Agreement, it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers,

and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in

this Paragraph) included in payments previously sought from the United States, or any State

Medicaid program, including, but not limited to, payments sought in any cost reports, cost

statements, information reports, or payment requests already submitted by AstraZeneca or any of

its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements,

information reports, or payment requests, even if already settled, be adjusted to account for the

effect of the inclusion of the unallowable costs. AstraZeneca agrees that the United States, at a minimum, shall be entitled to recoup from AstraZeneca any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by AstraZeneca or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on AstraZeneca or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

(d)     Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine AstraZeneca's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

14.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for above or in Paragraph 15 (waiver for beneficiaries paragraph), below.

15.     AstraZeneca agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16.     AstraZeneca warrants that it has reviewed its financial situation and that it

currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to AstraZeneca, within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which AstraZeneca was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

17.    Upon receipt of the payments described in Paragraph 1, above, the United States and Wetta shall promptly sign and file in Civil Action I a Notice of Intervention and Joint Stipulation of Dismissal with prejudice as to all federal counts in Civil Action I pursuant to the terms and conditions of the Agreement. Upon receipt of the payments described in Paragraph 1, above, Kruszewski shall promptly sign and file in Civil Action II a Notice of Dismissal with prejudice as to all federal counts in Civil Action II pursuant to the terms and conditions of the Agreement.

18.    Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

19.    AstraZeneca represents that this Agreement is freely and voluntarily entered into

without any degree of duress or compulsion whatsoever.

20.     Wetta and Kruszewski represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

21.     This Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement is the United States District Court for the Eastern District of Pennsylvania, except that disputes arising under the CIA shall be resolved exclusively under the dispute resolution provisions in the CIA.

22.     For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

24.     The individuals signing this Agreement on behalf of AstraZeneca represent and warrant that they are authorized by AstraZeneca to execute this Agreement. The individual(s) signing this Agreement on behalf of Wetta and Kruszewski represent and warrant that they are authorized by Wetta and Kruszewski to execute this Agreement. The United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

25.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

26.     This Agreement is binding on AstraZeneca's successors, transferees, heirs, and

assigns.

27.     This Agreement is binding on Wetta and Kruszewski's successors, transferees, heirs, and assigns.

28.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

29.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 4-27-10     BY: _____
                          MICHAEL L. LEVY
                          United States Attorney
                          United States Attorney's Office
                          Eastern District of Pennsylvania

DATED: 4-27-10     BY: _____
                          VIRGINIA A. GIBSON
                          First Assistant
                          United States Attorney's Office
                          Eastern District of Pennsylvania

DATED: 4-27-10     BY: _____
                          MARGARET L. HUTCHINSON
                          Chief, Civil Division
                          United States Attorney's Office
                          Eastern District of Pennsylvania

DATED: 4-27-10     BY: _____
                          COLIN CHERICO
                          Assistant U.S. Attorney
                          United States Attorney's Office
                          Eastern District of Pennsylvania

DATED: _____     BY: _____
                          PATRICIA L. HANOWER
                          Trial Attorney
                          Commercial Litigation Branch
                          Civil Division
                          United States Department of Justice

THE UNITED STATES OF AMERICA

DATED:_____          BY: _____
                                MICHAEL L. LEVY
                                United States Attorney
                                United States Attorney's Office
                                Eastern District of Pennsylvania


DATED:_____          BY: _____
                                VIRGINIA A. GIBSON
                                First Assistant
                                United States Attorney's Office
                                Eastern District of Pennsylvania


DATED:_____          BY: _____
                                MARGARET L. HUTCHINSON
                                Chief, Civil Division
                                United States Attorney's Office
                                Eastern District of Pennsylvania


DATED:_____          BY: _____
                                COLIN CHERICO
                                Assistant U.S. Attorney
                                United States Attorney's Office
                                Eastern District of Pennsylvania


DATED: 4/27/10            BY: _____
                                PATRICIA L. HANOWER
                                Trial Attorney
                                Commercial Litigation Branch
                                Civil Division
                                United States Department of Justice

DATED: 4/27/10          BY: _____
                             GREGORY E. DEMSKE
                             Assistant Inspector General for Legal Affairs
                             Office of Counsel to the Inspector General
                             Office of Inspector General
                             United States Department of Health and Human Services


DATED:_____          BY: _____
                             LAUREL C. GILLESPIE
                             Deputy General Counsel
                             TRICARE Management Activity
                             United States Department of Defense


DATED:_____          BY: _____
                             SHIRLEY R. PATTERSON
                             Acting Deputy Associate Director Insurance Operations
                             Center for Retirement & Insurance Services
                             United States Office of Personnel Management


DATED:_____          BY: _____
                             DAVID COPE
                             Debarring Official
                             Office of the Assistant Inspector General for Legal Affairs
                             United States Office of Personnel Management

DATED:_____        BY: _____
                            **GREGORY E. DEMSKE**
                            Assistant Inspector General for Legal Affairs
                            Office of Counsel to the Inspector General
                            Office of Inspector General
                            United States Department of Health and Human Services

DATED: April 23, 2010  BY: _Rhonda L. Bershok, Acting Deputy General Counsel_
                       For:   **LAUREL C. GILLESPIE**
                            Deputy General Counsel
                            TRICARE Management Activity
                            United States Department of Defense

DATED:_____        BY: _____
                            **SHIRLEY R. PATTERSON**
                            Acting Deputy Associate Director Insurance Operations
                            Center for Retirement & Insurance Services
                            United States Office of Personnel Management

DATED:_____        BY: _____
                            **DAVID COPE**
                            Debarring Official
                            Office of the Assistant Inspector General for Legal Affairs
                            United States Office of Personnel Management

DATED:_____    BY: _____
                       GREGORY E. DEMSKE
                       Assistant Inspector General for Legal Affairs
                       Office of Counsel to the Inspector General
                       Office of Inspector General
                       United States Department of Health and Human Services


DATED:_____    BY: _____
                       LAUREL C. GILLESPIE
                       Deputy General Counsel
                       TRICARE Management Activity
                       United States Department of Defense


DATED: 4/26/10    BY: _____
                       SHIRLEY R. PATTERSON
                       Acting Deputy Associate Director Insurance Operations
                       Center for Retirement & Insurance Services
                       United States Office of Personnel Management


DATED: 4/26/2010  BY: _____
                       DAVID COPE
                       Debarring Official
                       Office of the Assistant Inspector General for Legal Affairs
                       United States Office of Personnel Management


*Settlement Agreement Between*
*United States and AstraZeneca, Inc.*

-18-

ASTRAZENECA

DATED: 4/27/10          BY: _____

Glenn M. Engelmann
Vice President and General Counsel
AstraZeneca LP
AstraZeneca Pharmaceuticals LP

DATED: 4/27/10          BY: _____

JOHN C. DODDS, ESQ.
Morgan, Lewis and Bockius, LLP

*Settlement Agreement Between*
*United States and AstraZeneca, Inc.*

-19-

RELATOR JAMES WETTA

DATED:_____        BY: _____
                                JAMES WETTA

DATED:_____         BY: _____
                                STEPHEN A. SHELLER, ESQ.

                                (Counsel to Relator James Wetta)

RELATOR JAMES WETTA

DATED: 4/23/10                    BY: _James Wetta by Michael Mustokoff_
                                 JAMES WETTA


DATED: 4/23/10                    BY: _Stephen a. Sheller_
                                 STEPHEN A. SHELLER, ESQ.

                                 (Counsel to Relator James Wetta)

                                 BY: _Michael Mustokoff_
                                 MICHAEL MUSTOKOFF
                                 MARK LIPOWICZ
                                 TERESA CAVENAGH
                                 DUANE MORRIS, LLP

                                 BY: _Gary M. Farmer by Michael Mustokoff_
                                 GARY M. FARMER JR.
                                 FARMER JAFFE WEISSING  EDWARDS FISTOS and
                                 LEHRMAN

-21-

RELATOR STEPHAN KRUSZEWSKI

DATED: 4/23/2010        BY: _____
                            STEFAN KRUSZEWSKI


DATED: _____  BY: _____
                            WILLIAM LEONARD, ESQUIRE
                            (Counsel to Stephan Kruszewski)

RELATOR STEPHAN KRUSZEWSKI

DATED:_____          BY: _____
                                STEFAN KRUSZEWSKI

DATED: 4/23/10             BY: _William J. Leonard____
                                WILLIAM LEONARD, ESQUIRE
                                (Counsel to Stephan Kruszewski)